**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

LINDA EWING,                                )
                                            )
    Plaintiff,          )
                                            )   2:17-cv-01573
    v.                  )
                                            )
FIRST ENERGY CORP.,                         )
                                            )
    Defendant.          )

## OPINION

On December 4, 2017, Plaintiff Linda Ewing filed a Complaint on behalf of herself and a

putative class alleging overtime violations under the FLSA and state wage acts. (Complaint, ECF

No. 1 ("Compl.").) Defendant FirstEnergy Corporation filed a Motion to Dismiss, averring that

Plaintiff did not plead sufficient factual allegations to establish that Defendant exercised

"significant control" over her in order to show Defendant was her "employer" under the FLSA.

(Motion to Dismiss, ECF No. 13; Brief in Support, ECF No. 14.) Defendant instead alleged that

Plaintiff worked for Spring Creek Acquisitions, LLC, which had entered into an agreement with

Defendant to perform compliance services, and that any such work was supervised by Burns &

McDonnell Engineering Co., Inc. under a separate contract with Defendant. (ECF No. 14, at 1–

2.)

The Court denied without prejudice Defendant's Motion to Dismiss, in part because

Defendant relied on extrinsic documents to support its arguments. (Order, ECF No. 22.) After the

initial case management conference, and after the parties submitted an Amended Rule 26(f)

Report, ECF No. 37, the Court ordered the parties to engage in a limited, first phase of discovery

"target[ing] . . . whether FirstEnergy is an employer or joint employer of Plaintiff," and stating

that a deadline for the second phase of discovery would be set by further order. (Initial Case Management Order, ECF No. 38, at 2.)

Plaintiff then alerted the Court of a discovery dispute (Notice, ECF No. 42), and the Court held a telephonic status conference on August 17, 2018. (ECF No. 43.) At that conference, the Court summed up the arguments pertinent to the limited, first phase of discovery: "[T]he defense—the argument was Miss Ewing was never an employee of FirstEnergy. And Miss Ewing's argument was: Oh, yes, I was." (Tr. of Aug. 17, 2018 Telephonic Status Conf., ECF No. 58-10 ("TSC Tr."), at 10:5-7.) The Court rejected Plaintiff's contention that discovery on this topic required finding out "how [FirstEnergy] treats these workers [like Ms. Ewing]" as opposed to investigating whether Ms. Plaintiff was in fact an employee of Defendant's at all. (*Id.* at 11:1–3.) The Court also told Defendant that its strategy in responding to discovery was "in the Court's estimation, cagier than [it] needed to be." (*Id.* at 7:15–17.)

Plaintiff has now filed two more Motions (ECF Nos. 45 & 49), both of which relate to its contention that the Court either should have or did order that the parties' discovery focus at the first phase on the "economic realities test," which governs whether a plaintiff or class member is an employee or an independent contractor, *see Donovan v. DialAmerica Marketing, Inc.*, 757 F.2d 1376, 1382 (3d Cir. 1985).

### A. Motion for Equitable Tolling

Plaintiff argues that Defendant "has forestalled the typical FLSA conditional certification process and taken advantage of the delay pending this initial issue that rightly should have been decided at the second stage of certification." (Pl.'s Br., ECF No. 46, at 9.) She requests that the Court apply equitable tolling "to cure the prejudice inflicted on potential class members through no fault of their own." (*Id.*) She repeatedly refers to the Court's phased discovery Order as a

2

"merits-first approach," which she contends "is not only far from normal, but contrary to [the] purpose of the FLSA collective action mechanism." (ECF No. 45–1, at 3.)

Plaintiff further argues that, "[h]ad First Energy not insisted on conducting discovery on the employer-employee relationship with the express intention to file a motion for summary judgment, Ewing would have filed her motion for conditional certification promptly after the June 6, 2018 scheduling conference," and therefore the Court should toll the statute of limitations from that date. (ECF No. 46, at 9.)

"Equitable tolling is a rare remedy to be applied in unusual circumstances, not as a cure-all for an entirely common state of affairs." *Wallace v. Kato*, 549 U.S. 384, 396 (2007). "There are three principal situations in which equitable tolling is appropriate: (1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action, and that deception causes non-compliance with an applicable limitations provision; (2) where the plaintiff in some extraordinary way has been prevented from asserting his rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 591 (3d Cir. 2005), *abrogated in part on other grounds by Rotkiske v. Klemm*, 890 F.3d 422 (3d Cir. 2018). The plaintiff bears the burden of showing that equitable tolling is warranted. *Id.*

Here, Plaintiff argues that the statute of limitations should be tolled based on the first and second factors. She argues that Defendant misled her and other potential class members by leading them to believe they were independent contractors, and that Defendant continues to stymy discovery by refusing to respond to inquiries related to the economic realities test.

Plaintiff appears to conflate the threshold issue of whether First Energy was an employer or joint employer of Ms. Ewing with the economic realities test used at the second class of class

3

certification to determine whether a worker is a properly considered an "employee" under the FLSA. The Court ordered limited discovery to determine the former, that is, whether Defendant employed Ms. Ewing and therefore is a proper party to this litigation in the first place. The Court did not, contrary to Plaintiff's assertions, order "merits-based discovery," (Pl.'s Br., at 9). Rather, the Court ordered the parties to engage in limited discovery to determine whether First Energy was a proper party to the case.

The standard to determine whether an entity is the "employer" of a worker-plaintiff raising an FLSA claim is whether that entity exercised "significant control" over the worker. *In re Enterprise Rent-A-Car Wage & Hour Empl. Practices Litig.*, 683 F.3d 462, 468 (3d Cir. 2012) (quoting *NLRB v. Browning-Ferris Indus. of Pa.*, 691 F.2d 1117, 1124 (3d Cir. 1982). The Third Circuit has announced a nonexhaustive list of factors for determining whether an entity is an employer or joint employer of a given employee.[1] "Does the alleged employer have: (1) authority to hire and fire employees; (2) authority to promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours; (3) day-to-day supervision, including employee discipline; and (4) control of employee records, including payroll, insurance, taxes, and the like." *In re Enter.*, 683 F.3d at 469.

The *Enterprise* test, and not the "economic realities test," which courts use to determine whether a worker is an "employee" for FLSA purposes, applies to the threshold question of whether Defendant employed Plaintiff. Plaintiff's accusations that Defendant "forestalled the typical FLSA conditional certification discovery process and [took] advantage of the delay pending this initial issue that rightly should have been decided at the second stage of certification," (ECF No. 46, at 9), therefore lack foundation. Any merits-based defenses,

---

[1] The Court uses the word "employee" solely for ease of reference. Whether Plaintiff and the putative class members are employees or independent contractors is an issue yet to be determined.

including a defense that an employer had no employees, will indeed be resolved at the *second* stage of certification. *See, e.g., Zavala v. Wal Mart Stores, Inc.*, 691 F.3d 527, 536–37 (3d Cir. 2012). But an inquiry into whether a purported employer is a proper defendant in the first place is not a merits-based defense. Asking the Court for a limited inquiry into whether Defendant even employed Plaintiff is far from "extraordinary," nor has it prevented Plaintiff from asserting her rights. To the extent that anyone insists on a "merits-first approach," it is Plaintiff, who has, contrary to Court Order, repeatedly requested discovery going to the issue of whether Plaintiff was properly classified as an independent contractor.

Relatedly, Plaintiff avers that First Energy has "misled Ewing and the other potential class members" into thinking they were independent contractors, and that this "misrepresentation" suffices to toll the limitations period. (ECF No. 46, at 11.) That is because, Plaintiff says, this alleged wrongdoing presents *Podobnik*'s first situation where equitable tolling is appropriate: "where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action, and that deception causes non-compliance with an applicable limitations provision," 409 F.3d at 591. Not so. Again, whether Plaintiff is an employee or an independent contractor is a merits question, and she may not bootstrap this inquiry to accuse Defendant of misleading her and others as to their status.

Plaintiff's cited cases point out what type of defendant conduct is actually misleading or extraordinary in this context. *See, e.g., Kim v. Dongbu Tour & Travel, Inc.*, 2013 WL 5674395, at *4 (D.N.J. Oct. 16, 2013) (granting tolling when defendants failed to post notice, misrepresenting the employees' status *after* the court had determined as a matter of law that they were employees and not independent contractors, bringing a frivolous appeal, and retaliating against the plaintiffs); *Yahraes v. Rest. Assocs. Events Corp.*, No. 10-cv-935, 2011 WL 844963,

at *3 (E.D.N.Y Mar. 8, 2011) (granting tolling because defendants withheld documents from the plaintiff related to the investigation and asked the court to decide defendants' motion to dismiss before certification); *Antonio-Morales v. Bimbo's Best Produce, Inc.*, No. 8:5105, 2009 WL 1591172 (E.D. La. Apr. 20, 2009) (granting tolling in light of pending criminal action against employer).

Given her repeated filings on the same topic despite the Court's straightforward instructions to the parties on August 17, 2018, it appears to the Court that any delay in discovery here can be fairly attributed to Plaintiff, and not to Defendant. Thus, Plaintiff has not carried her burden to demonstrate that any of the factors justifying equitable tolling exist. Her Motion to Extent Time to Statute of Limitations, ECF No. 45, will therefore be denied. Of course, this conclusion does not preclude Plaintiff from later seeking equitable tolling, upon a proper showing of the presence of one of the factors outlined in *Podobnik*.

### B. Motion to Compel

Plaintiff advances related arguments in her Motion to Compel, ECF No. 59, in which she asks the Court to compel responses to several interrogatories, requests for production, and a Rule 30(b)(6) notice. (*See* Motion to Compel, at 1–2.) She argues that she seeks "routine FLSA, independent contractor, discovery" but that Defendant has "stonewalled all attempts at discovery on [the] 'gateway' issue" of whether Defendant is Plaintiff's employer or joint employer. (*Id.* at 1.)

Defendant responds that Plaintiff has misstated the applicable law by averring that the *Enterprise* employer/joint employer test overlaps with the economic realities test. Defendant contends that Plaintiff's requests fall outside the authorized first phase of discovery, and that it

has fully responded to Plainitff's First Amended Interrogatories and her First Requests for Production. (*See* Opposition to Motion to Compel, ECF No. 61 ("Def.'s Opp."), at 1–2; 11.)

For the reasons that follow, Plaintiff's Motion to Compel will be denied.

### 1. *Enterprise* and economic realities tests

Plaintiff argues that there is "clear overlap" between the *Enterprise* joint employer factors and the economic realities factors, (Motion to Compel, at 2), and that because Defendant's purported misclassification of Plaintiff as an independent contractor is "at the heart of this dispute," (*id.* at e), it is entitled to discovery under both the economic realities and joint employment test. However, the Court explicitly told the parties on multiple occasions that the first phase of discovery was limited to "whether FirstEnergy is an employer or joint employer of Plaintiff." (Initial Case Mgmt. Order, at 2.)

For the sake of comparison, the two tests, both composed of nonexhaustive factors, are as follow:

#### a. *Economic Realities Test*

1) [T]he degree of the alleged employer's right to control the manner in which the work is to be performed; 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; 4) whether the service rendered requires a special skill; 5) the degree of permanence of the working relationship; 6) whether the service rendered is an integral part of the alleged employer's business.

*Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1293 (3d Cir. 1991).

#### b. Enterprise *Joint Employer Test*

1) the alleged employer's authority to hire and fire the relevant employees; 2) the alleged employer's authority to promulgate work rules and assignments and to set the employees' conditions of employment: compensation, benefits, and work schedules, including the rate and method of payment; 3) the alleged employer's involvement in day-to-day employee supervision, including employee discipline;

and 4) the alleged employer's actual control of employee records, such as payroll, insurance, or taxes.

*In re Enter.*, 683 F.3d at 469.

As the reader can see, the economic realities test focuses on what the *employee* is doing for the purported employer, while the *Enterprise* test focuses on what the *employer* is doing vis-à-vis the purported employee. The two tests, of course, contain a similar question—what kind of authority, if any, does the alleged employer have over the alleged employee? But in the economic realities test, this inquiry goes to whether the employer, as opposed to the alleged employee, can decide the manner of the alleged employee's work. By contrast, in the *Enterprise* test, the inquiry is whether *this* alleged employer, as opposed to some other entity or individual, can fire or hire the alleged employee.

Plaintiff argues that she "is entitled to answers regarding what First Energy intends to use to support its claim that Ewing was properly classified as an independent contractor." (Motion to Compel, at 4.) That's not quite right. Plaintiff is entitled to answers regarding whether Defendant employed or jointly employed her. Once that question is resolved, she may, pending further Order of the Court, proceed with discovery relating to whether she was properly classified as an independent contractor.

A review of Defendant's responses to Plaintiff's First Amended Interrogatories and First Amended Requests for Production, as provided by the parties, reveals that Defendant has consistently declined to answer questions related to the economic realities test. Rather, it explained its position under the *Enterprise* test, namely that Plaintiff's employer was Spring Creek Acquisitions, LLC, and/or Burns & McDonnell Engineering Co. Inc., and that Defendant did not employ Plaintiff. (*See* Exhibit E, ECF No. 61–5 ("Def.'s Objections to First Amended Interrogatories"), at 2–3 (providing full answer to Interrogatory No. 1).)

8

Plaintiff protests that the Court did, in fact, expand the scope of discovery when it told the parties that it was not "out of bounds" for Plaintiff to inquire into "how those in the same job category or assigned the same task were also treated." (TSC Tr., at 24.) But the Court did not intimate that this entitled Plaintiff to discovery on the economic realities test or whether Plaintiff was similarly situated to other employees for conditional certification purposes. Instead, the Court clarified that the proper inquiry was "what [Plaintiff's] status was, whether she was by statute and regulation . . . treated as an employee." (*Id.*) Thus, Defendant's response to Plaintiff's Interrogatory No. 6, which sought a description of differences between Plaintiff and other Right of way agents, answered Plaintiff's question within the scope of the Court's clarification. (*See* Def.'s Objections to First Amended Interrogatories, at 6 ("Defendant states that Plaintiff and other Right of Way agents supplied by Spring Creek were assigned to Defendant's projects by Spring Creek and were supervised by Spring Creek and/or Burns & McDonnell.").)

For similar reasons, Plaintiff's objections to Defendant's answers to other interrogatories are without merit. It may well be that Plaintiff is displeased or frustrated that Defendant lacks information about some topics—for instance, Plaintiff's direct supervisors—because Defendant states that Spring Creek and/or Burns & McDonnell (and not First Energy) supervised Plaintiff. However, the question at this stage is whether Defendant employed Plaintiff. If it did not, which is a matter yet to be determined, then Defendant would not have such information. In that case, discerning whether Plaintiff was properly classified as an independent contractor would be better resolved with her actual employer added as a party. In fact, the parties advise that Plaintiff did indeed file a motion to compel subpoena responses against Burns & McDonnell, in a separate forum. (*See* Reply, ECF No. 62, at 3.)

9

Relatedly, Plaintiff has submitted exhibits as purported examples of standards or requirements for her work, which she claims contradict Defendant's assertion that it had no such standards or requirements pertaining to Plaintiff in particular. Aside from a "Contact Report" format that uses the FirstEnergy logo, and an email from FirstEnergy's in-house counsel CCing Ms. Ewing on an ongoing negotiation, these documents do not facially indicate that Defendant (and not Spring Creek, Burns McDonnell, or some other entity) supplied them to Ms. Ewing. (*See* Exh. 11, ECF No. 59–11; Exh. 13, ECF No. 59–13.) The Court will not compel Defendant to respond further.

## 2. Rule 34 withholding statement

Plaintiff also alleges that Defendant failed to provide a withholding statement as contemplated by Fed. R. Civ. P. 34(b)(2)(C). Rule 34(b)(2)(C) provides that a party objecting to a production request "must state whether any responsive materials are being withheld on the basis of that objection." However, the Court does not identify any objection in Defendant's responses that is not based in a general objection to discovery on the economic realities test—in other words, Defendant objected to inquiries that the Court did not authorize at this stage. Rule 34 does not require a withholding statement where entire topics have been taken off the table by court order and a party declines to respond to interrogatories on such topics. Additionally, the parties report that after they conferred regarding the scope and meaning of Plaintiff's requests, Defendant supplemented its production request. (*See* Motion to Compel, at 9–12; Def.'s Opp., at 16–17.)

## 3. Objections to 30(b)(6) Notice

Plaintiff also argues that Defendant improperly objected to her Rule 30(b)(6) Deposition Notice, and that its objections go not only to the economic realities test, but to the *Enterprise*

joint employer test as well. (Motion to Compel, at 12.) For substantially the same reasons as outlined above, the Court will not overrule Defendant's objections to the extent that the Notice seeks information relevant to the economic realities test. The Court reviewed Defendant's Objections, ECF No. 59-9, and does not identify any objections to discovery pertaining to the *Enterprise* test. Plaintiff's request will be denied.

## C. Conclusion

For the foregoing reasons, Plaintiff's Motion to Extend Time to Statute of Limitations and her Motion to Compel will be denied. An appropriate Order will issue.

Mark R. Hornak
United States District Judge

Dated: December 21, 2018
cc:     All counsel of record